IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TIMOTHY BERNARD WINGFIELD, : :  Plaintiff, : : V. : : JOSHUA ANDREWS, *et al.*, : : Defendants. : : | NO. 5:24-cv-00234-TES-CHW |

## ORDER & RECOMMENDATION

Plaintiff Timothy Bernard Wingfield, a prisoner in Macon State Prison in Oglethorpe, Georgia, filed a *pro se* 42 U.S.C. § 1983 civil rights complaint, ECF No. 1, and a motion for leave to proceed in this action *in forma pauperis*. ECF No. 2. Thereafter, Plaintiff's motion for leave to proceed *in forma pauperis* was granted, and Plaintiff was ordered to pay an initial partial filing fee of $4.83. ECF No. 5. Plaintiff was given fourteen days to pay the initial partial filing fee and was cautioned that his failure to do so could result in the dismissal of this case. *Id.*

Thereafter, more than fourteen days passed, during which Plaintiff did not pay the initial partial filing fee. As a result, Plaintiff was ordered to show cause to the Court why this case should not be dismissed based on his failure to pay the fee as ordered. ECF No. 6. Plaintiff subsequently filed a response to that order, asserting that he believed that the Court would receive the funds out of his account. ECF No. 7. Plaintiff noted that he

had money available in his account to pay the fee and asked the Court to obtain the money from the prison business office. *Id.* at 1-2.

Plaintiff was reminded that it is his responsibility to make arrangements to have the fee paid from his account and that he must request that the business office submit the initial partial filing fee on his behalf. ECF No. 9. Plaintiff was again ordered to pay the initial partial filing fee of $4.83. *Id.* Plaintiff was also instructed that, if he tried to have the fee paid from his account but was unable to do so, he must submit a written notice informing this Court as to the steps that he had taken to try to have the fee paid. *Id.*

Plaintiff has now filed a response to the Court's order, outlining his attempt to get the fee paid from his account. ECF No. 10. As it appears that Plaintiff has tried to comply with the Court's order to pay the initial partial filing fee but has been unable to do so through no fault of his own, he will now be permitted to proceed to the preliminary review stage without prepayment of the initial partial filing fee. Plaintiff is still responsible for paying the fee in installments as set forth in the previous order.

On preliminary review of Plaintiff's complaint, Plaintiff will be permitted to proceed for further factual development on his excessive force claim and his deliberate indifference to a serious medical need claim against Sergeant Joshua Andrews. It is **RECOMMENDED**, however, that Plaintiff's claims against John Doe defendants and his claims under the Universal Declaration of Human Rights be **DISMISSED WITHOUT PREJUDICE**, as discussed below.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

    I.    <u>Standard of Review</u>

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding *in forma pauperis*. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court generally must accept the factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). Pro se pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The pleading cannot "merely create[] a suspicion that the pleader might have a legally cognizable right of action." 5 Charles Alan Wright & Arthur Alan Miller, *Federal Practice and Procedure* § 1206 (4th ed. June 2024 update). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Factual Allegations

In his complaint, Plaintiff asserts that in November 2023, he experienced a medical emergency, which involved his heart "pounding hard," as well as severe pain in his chest, arm, and shoulder. ECF No. 1 at 7. Plaintiff asked an officer for help, but the officer ignored Plaintiff. *Id.* On the suggestion of another inmate, Plaintiff then went to a room where several sergeants, including Defendant Sergeant Joshua Andrews, were sitting. *Id.*

at 7-8. Plaintiff told these sergeants that he was having a medical emergency, but they told him to go back to his dorm. *Id.* at 7. When Plaintiff reiterated that he was in pain, one of the officers pointed a can of pepper spray at Plaintiff and again told him to leave. *Id.* at 7-8.

Rather than go back to his dorm, Plaintiff attempted to walk to medical by himself. *Id.* at 8. At that point, the sergeants Plaintiff had approached came over to Plaintiff and told him again to go back to his dorm. *Id.* Plaintiff repeated that he needed to go to medical for an emergency because he was in pain. *Id.* One of the officers then told Plaintiff to stand up so that he could be handcuffed and taken to medical. *Id.* Plaintiff asked why he needed to be handcuffed because he had not seen any other inmates be put into restraints to be escorted to medical in an emergency. *Id.* Plaintiff also sat down on the floor because he was having trouble breathing. *Id.*

The officers next instructed two other inmates to take Plaintiff back to his dorm. *Id.* Another inmate asked the officers if they wanted him to take Plaintiff back to the dorm, referring to Plaintiff in a derogatory manner. *Id.* The officers said that they did. *Id.* Sergeant Andrews then said to the other officers, "I'm find to do it to him," which Plaintiff asserts is code for physically assaulting or even murdering a person. *Id.* At this point, Plaintiff was under the control of the officers and was being put into handcuffs. *Id.* at 9. Plaintiff alleges that Andrews then physically assaulted Plaintiff, and Plaintiff yelled at Andrews to get away. *Id.* Plaintiff contends that "Officer Andrews assaulted me out of my shoes and clothes" and that he "slammed me to the floor." *Id.*

Andrews and two other officers then escorted Plaintiff to the segregation building. *Id.* at 10. While taking Plaintiff to segregation, Andrews grabbed Plaintiff's arm, causing Plaintiff further pain. *Id.* Andrews repeatedly said, "I'm find to do it to him" and otherwise continued to threaten Plaintiff. *Id.* Plaintiff contends that he never did anything to Andrews, but that Andrews gave Plaintiff an "evil look" on Plaintiff's first day at Riverbend because Plaintiff made a complaint relating to legal items that his attorney had mailed to him. *Id.*

Plaintiff filed this suit naming Joshua Andrews and John Doe correctional officers as the defendants. *Id.* at 4. Plaintiff invokes several provisions that he says were violated on the occasion recounted in his complaint. *Id.* These claims are addressed below.

## IV. Plaintiff's Claims

### A. John Doe Defendants

As an initial matter, Plaintiff states that he does not know the names of the other officers involved in the events described, and he seeks to include these officers as John Doe Defendants. Fictitious party pleading, *i.e.*, bringing claims against John Doe defendants, is generally only permitted in federal court when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his or her actual name is unknown. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Plaintiff does not include any description of the other officers involved, except to say that one of the officers who escorted Plaintiff to segregation was male and the other was female. Plaintiff also provides only minimal allegations regarding the actions of any particular officer other than Andrews.

These allegations are not sufficient to allow Plaintiff to proceed against the John Doe officers. Accordingly, it is **RECOMMENDED** that Plaintiff's claims against the John Doe officers be **DISMISSED WITHOUT PREJUDICE**.

B. <u>Universal Declaration of Human Rights</u>

Plaintiff cites a number of provisions from the Universal Declaration of Human Rights ("UDHR"). The UDHR does not create a private right of action for an individual. *See Renkel v. United States*, 456 F.3d 640, 643 (6th Cir. 2006) ("'[C]ourts presume that the rights created by an international treaty belong to a state and that a private individual cannot enforce them.'") (quoting *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001)); *see also Konar v. Illinois*, 327 F. App'x 638, 640 (7th Cir. 2009) (providing that the UDHR is "non-binding" and provides "no private rights of action").

The Eleventh Circuit has also held that a plaintiff cannot state a § 1983 claim under the UDHR. Notably, 42 U.S.C. § 1983 provides for claims "based on 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]'" *Freeze v. Sawyer*, 808 F. App'x 860, 864 (11th Cir. 2020) (per curiam) (quoting 42 U.S.C. § 1983). A plaintiff seeking to proceed in a § 1983 action must allege facts showing "that he was deprived of a federal right" (*Id.*), but "the rights secured by the UDHR are not rights that are enforceable under federal law." *Id.* at 863-64 (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) ("[The UDHR] does not of its own force impose obligations as a matter of international law.")). Therefore, it is also **RECOMMENDED** that Plaintiff's claims under the UDHR be **DISMISSED WITHOUT PREJUDICE**.

### C. Eighth Amendment

#### 1. Excessive Force

Plaintiff's allegations implicate a possible claim that Sergeant Andrews used excessive force against him. The Eighth Amendment clearly prohibits the unnecessary and wanton infliction of pain, the infliction of pain without penological justification, and the infliction of pain grossly disproportionate to the severity of the offense. *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The "core judicial inquiry" in an Eighth Amendment excessive force claim is addressed to "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Plaintiff asserts that Sergeant Andrews slammed Plaintiff to the ground and assaulted Plaintiff while Plaintiff was being put in handcuffs. Plaintiff also alleges that Andrews continuously threatened Plaintiff with serious injury or possibly death, suggesting that Andrews was acting with the necessary state of mind. Accepting these allegations as true, the Court will allow Plaintiff to proceed on his excessive force claim against Sergeant Joshua Andrews.

#### 2. Deliberate Indifference to Serious Medical Need

Plaintiff also asserts that Andrews was deliberately indifferent to Plaintiff's medical needs insofar as he refused to allow Plaintiff to go to medical while Plaintiff was experiencing an emergency. To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege "(1) a serious medical need; (2) the defendants'

8

deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted). The first prong is objective, and

> a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. . . . In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks and citations omitted).

For the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 411 U.S. 825, 839 (1994)). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837). To show that a particular "defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255. Whether the defendant was subjectively aware of a serious risk of harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial

9

evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Liability cannot be based on simple negligence or medical malpractice, but rather on some sort of conscious disregard for a serious and imminent risk. *Id*. at 834; *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that mere allegations of negligence or malpractice do not amount to deliberate indifference). In this regard, a plaintiff must allege that the defendant's response to an objectively serious medical need "was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citations omitted); *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

A prison official might act with deliberate indifference by denying or delaying medical care or by providing "medical care which is so cursory as to amount to no treatment at all." *Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citations omitted). But "[s]ome delay in rendering medical treatment may be tolerable depending on the nature of the medical need and the reason for the delay." *Adams*, 61 F.3d at 1544. The final prong simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citation omitted) (explaining that "as with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct").

Plaintiff alleges that he was experiencing medical symptoms including pain in his chest and arm. Plaintiff also alleges that he told Andrews about these symptoms and repeatedly asked to go to medical, but Andrews took Plaintiff to segregation instead. Plaintiff does not provide any additional information with regard to the medical emergency that he says that he was experiencing such as what happened after he was taken to segregation. Nevertheless, accepting Plaintiff's allegations as true and construing them in his favor, Plaintiff alleges that Andrews took Plaintiff to segregation despite knowing that Plaintiff was experiencing medical symptoms. Plaintiff will be permitted to proceed for further factual development on his claim that Andrews was deliberately indifferent to Plaintiff's serious medical need.

IV.   Conclusion

Therefore, it is **RECOMMENDED** that Plaintiff's claims against John Doe defendants and claims under the UDHR be **DISMISSED WITHOUT PREJUDICE**, as discussed herein. Plaintiff will be permitted to proceed for further factual development on his excessive force claim and deliberate indifference to a serious medical need claim against Sergeant Joshua Andrews.[1]

---

[1] In addition to his § 1983 claims, Plaintiff asserts that Andrews violated certain provisions of the Georgia Constitution. The only federal claims with which Plaintiff should be allowed to proceed are his Eighth Amendment excessive force claim and deliberate indifference claim. Although the Court has determined that these claims should survive initial screening, it is possible that they may fail if faced with a motion to dismiss or motion for summary judgment. Should the federal claims over which this Court has original jurisdiction be dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). As federal jurisdiction over Plaintiff's state law claims remains an unsettled issue, the Court finds it unnecessary and inappropriate to reach the merits of such claims at this early stage of the case.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with Tillman E. Self, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant **JOSHUA ANDREWS**, it is accordingly **ORDERED** that service be made on Defendant and that he file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly

advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendant is similarly advised that he is expected to diligently defend all allegations made against him and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has

13

been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission

of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED**, this 19th day of March, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge